NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GOLDRICH,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF JERSEY CITY, et al.,<br><br>        Defendants. | Case No. 15-cv-885 (SDW) (LDW)<br><br>**OPINION**<br><br>December 8, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Jersey City ("Jersey City"), Steven Fulop, James Shea, Philip Zacche, and Joseph Connors' (collectively, "Defendants") Joint Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56.

This Court has jurisdiction over this action pursuant to 128 U.S.C §§ 1331, 1343(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, Defendants' Joint Motion for Summary Judgment is **GRANTED in part**, **and DENIED in part**.

    **I.**        **BACKGROUND AND PROCEDURAL HISTORY**

At all times relevant to the Complaint, Plaintiff David Goldrich ("Goldrich" or "Plaintiff") was a Lieutenant for the Jersey City Police Department ("JCPD"). From approximately 2008 through 2013, Plaintiff was a political supporter of Defendant Steven Fulop ("Fulop"). Plaintiff

donated to and volunteered for Fulop's campaigns for City Council and Mayor of Jersey City. After Fulop won the mayoral election in 2013, he appointed then Deputy Chief Robert "Bubba" Cowan ("Cowan") to serve as JCPD's Chief of Police. Cowan had also contributed to and volunteered for Fulop's mayoral campaign, and coordinated support for Fulop within the police department. (Lockman Cert., Ex. 3, Cowan Aff. ¶ 4, ECF No. 126-6.) In 2014, Cowan made Plaintiff an Off-Duty Coordinator for the JCPD's Off-Duty Program, which made Plaintiff eligible for overtime pay and gave him the authority to assign JCPD supervisors to off-duty work.[1]

Following Cowan's disagreements with Fulop and Jersey City's Director of Public Safety, Defendant James Shea ("Shea"), over the day-to-day operations of the JCPD, and Cowan's subsequent demotion to Deputy Chief, Plaintiff alleges that he ceased his support for Fulop in or around September 2014. (Pl.'s Counter Statement Facts ¶¶ 21-22, 25, 36, 41, ECF No. 126-1) [hereinafter Pl.'s 56.1]. Shortly thereafter, when the Hudson County Democratic Organization ("HCDO") contacted Plaintiff to sell tickets to their Fall Gala, he declined to buy them because he believed purchasing a ticket was effectively a campaign donation to the HCDO, of which Fulop is a prominent member. (Lockman Cert., Ex. 10, Pl.'s Resp. Defs.' Interrogs. at 8, ECF No. 126-8.)

After Cowan was demoted in July 2014, Defendant Philip Zacche ("Zacche") was named Acting Chief of Police, and then officially appointed Chief of Police in October 2014. Plaintiff continued to support former Chief Cowan, however, and alleges that others on the JCPD considered him a "Bubba guy," in reference to Cowan's nickname. (Goldrich Dep. 73:13-74:17, Apr. 1, 2016, ECF No. 126-8; Lockman Cert., Ex. 10 at 9.)

---

[1] Jersey City police officers are given opportunities to perform off-duty work for third-party employers on construction projects, street repair projects, utility upgrades, and so forth. Superior officers (*i.e.*, sergeants, lieutenants, and captains) perform off-duty work as "supervisors."

2

In September 2014, around the time that he decided to no longer support Fulop, Plaintiff alleges that he notified a union designee that funds from the off-duty trust account were being "illegally misappropriat[ed]" by Jersey City's Business Administrator Robert Kakoleski ("Kakoleski") to "plug holes" in the City's main operating budget.[2] (Pl.'s 56.1 ¶¶ 81-82). Plaintiff subsequently met with Shea and the Off-Duty Intake Coordinator Tom Mahoney ("Mahoney"), during which time Plaintiff raised his concerns about the off-duty account.

Plaintiff alleges that Defendants retaliated against him because he withdrew his support for Fulop and complained about the misappropriation of off-duty account funds. (Am. Compl. ¶ 17.) Plaintiff avers that during a conversation with Deputy Chief Joseph Delaney, he was told that Defendant Joseph Connors ("Connors"), the Deputy Chief Operations Commander, had said, "all Bubba people must go" at a meeting of senior command in October 2014. (Goldrich Dep. 122:22-126:3, Apr. 1, 2016.)

On October 27, 2014, newly-appointed Chief Zacche moved Plaintiff to the Patrol Division to serve as a Desk Lieutenant.[3] Prior to being transferred, Plaintiff and his wife, who is a JCPD police officer, were able to work on the same days. Plaintiff alleges that as a result of being transferred, they no longer share the same work schedule, and thus "spend almost no waking time together." (Pl.'s 56.1 ¶ 149.) Plaintiff was also denied a transfer to serve as the Executive Officer of the East District.[4] (Pl.'s 56.1 ¶¶ 136, 141, 143.) Furthermore, he was no longer given overtime or additional pay for his work as the Off-Duty Coordinator. (Lockman Cert., Ex. 10 at 13.)

---

[2] An "off-duty" trust account was created by a Jersey City ordinance "for the receipt of fees collected for the payment for [sic] off-duty employment." (Lockman Cert., Ex. 22, ECF No. 126-8.) Third-party employers deposit monies into the trust account, which the JCPD disburses to police officers.

[3] Plaintiff alleges that his new position in the Patrol Division was "undesirable." (Am. Compl. ¶ 60.)

[4] The Executive Officer of the East District is second in command for the entire District, and reports directly to the Commanding Officer of the East Division. Plaintiff had previously held the position, and upon learning of his reassignment to Desk Lieutenant preferred to serve as Executive Officer once again.

Plaintiff filed suit in this Court on February 5, 2015. (ECF No. 1.) He amended his Complaint on December 24, 2015, setting forth claims for: (1) violations of his First Amendment rights to free association and free speech, pursuant to 42 U.S.C. § 1983; (2) Jersey City's violations of 42 U.S.C. § 1983; (3) violations of the Conscientious Employee Protection Act ("CEPA") under N.J. Stat. Ann. § 34:19-1 *et seq.*; (4) common law conspiracy; and (5) violations of the New Jersey Civil Rights Act ("NJCRA").[5] (ECF No. 21.) Defendants moved for summary judgment on June 14, 2017. (ECF No. 121.) Plaintiff filed his opposition on August 4, 2017, and Defendants replied on August 18, 2017. (ECF Nos. 126, 129.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its

---

[5] By way of Opinion dated July 25, 2016, all claims were dismissed against Defendant Kakoleski, and Plaintiff's CEPA claim was dismissed against Defendant Fulop. (ECF No. 56.)

4

burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.  Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.  *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III. DISCUSSION

### a. Count One – 42 U.S.C. § 1983

A plaintiff in a § 1983 action "must allege that some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Here, Plaintiff alleges Defendants infringed on his First Amendment rights to freedom of association and freedom of speech in violation of 42 U.S.C. § 1983. Defendants do not dispute that they acted under color of state law when making the employment decisions at issue here. Therefore, this Court's analysis focuses on whether the relevant employment decisions deprived Plaintiff of a cognizable federal right.

#### i. *Freedom of Association*

The "freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973) (citing *NAACP v. Button*, 371 U.S. 415, 430 (1963); *Bates v. Little Rock*, 361 U.S. 516, 522-23 (1960); *NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958)). Here, Plaintiff alleges he was retaliated against: (1) for his political association with Cowan, and (2) because he ceased his support of Fulop. To establish a claim of discrimination based on political patronage in violation of the First Amendment, Plaintiff must show that (1) he "was employed at a public agency in a position that does not require political affiliation," (2) he "was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).

There is no dispute that Plaintiff was employed at a public agency in a non-political position, therefore, this Court looks to whether he was engaged in constitutionally protected conduct. Constitutionally protected conduct includes an employee's right to maintain an affiliation

with a political party as well as the "right not to have allegiance to the official or party in power[.]" *See Galli*, 490 F. 3d at 272. Plaintiff's identification as a "Bubba guy" and his support for the demoted Chief of Police, however, is not a cognizable political affiliation. *See Falco v. Zimmer*, No. 13-1648, 2015 WL 7069653, at *10 (D.N.J. Nov. 12, 2015) (finding that an association with long-time residents of the city, which the plaintiff defined as "Old Hoboken," was not a cognizable political association because the group was amorphous and non-political; and dismissing the plaintiff's political association retaliation claim). Thus, Plaintiff's association with an "amorphous, non-political group" of people who support the former Chief is not constitutionally protected political activity. *Id.*

To the extent Plaintiff also bases a freedom of association claim on his decision to no longer support Fulop, his position is unavailing. Though "the First Amendment . . . protects an employee from discrimination for failure to support the winning candidate[,]" the record demonstrates that Plaintiff did support the winning candidate. *See Galli*, 490 F.3d at 272. Plaintiff claims to have politically supported Fulop for years, including during Fulop's 2013 mayoral campaign. (Am Compl. ¶ 18; Pl.'s 56.1 ¶ 7.) By the time Plaintiff stopped supporting Fulop in 2014, Fulop had already won the 2013 mayoral election. Furthermore, Plaintiff's intention to no longer support the Mayor did not "change [his] otherwise overt acts of political association to non-association[.]" *See Eastman v. Lackawanna Cty.*, 95 F. Supp. 3d 773, 787-88 (M.D. Pa. 2015).[6]

For the reasons discussed above, Plaintiff's association with Cowan and his decision to no longer support Fulop are not constitutionally protected conduct. This Court need not reach the

---

[6] Insofar as Plaintiff's political association claim is also based on his refusal to donate to the HCDO, of which Plaintiff contends Fulop is a prominent member, this Court finds Plaintiff's arguments unpersuasive because Plaintiff ultimately made financial contributions to the HCDO within weeks of declining to purchase tickets to the organization's gala. (Defs.' 56.1 ¶¶ 143-44; Pl.'s Resp. Defs.' 56.1 ¶¶ 143-44.)

7

third prong of the analysis. Defendants' summary judgment motion is granted as to Plaintiff's freedom of association claim.

### ii. Freedom of Speech

Plaintiff also alleges that his complaints about the misappropriation of funds from the off-duty account constituted protected speech. As a public employee, Plaintiff's speech is protected when:

> (1) in making it, [he] spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the [JCPD] did not have "an adequate justification for treating . . . [Plaintiff] differently from any other member of the general public" as a result of the statement he made.

*Hill v. Borough of Kutztown*, 455 F. 3d 225, 241-42 (3d Cir. 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Morris v. Phila. Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

"When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 410. As an Off-Duty Coordinator, Plaintiff assigned supervisors to all off-duty locations and assignments. A lack of funding for those assignments would certainly impact his ability to carry out his job function. Thus, as a matter of practicality, lodging a complaint about the misappropriation of funds is within the scope of Plaintiff's job duties even if he was not strictly required to report the issue to his superiors. *See Oras v. City of Jersey City*, No. 05-4003, 2008 WL 906344, at *3 (D.N.J. Apr. 1, 2008) ("[A] court should engage in a practical inquiry to determine whether a task is within the scope of the employee's professional duties."); *see also Santiago v. New York & New Jersey Port Auth.*, 687 F. App'x 146, 151 (3d Cir. 2017) (finding that a probationary officer's report regarding

a safety incident involving another employee was "within her ordinary duties, even if it was not mandatory").

Additionally, the Third Circuit has consistently held that "complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties." *See Morris*, 487 F. App'x at 39; *Santiago*, 687 F. App'x at 151-52 (holding that the plaintiff was not speaking as a citizen when she delivered a handwritten report regarding a safety incident involving another employee up the chain of command). Here, Plaintiff raised his concerns with a union designee who forwarded him up the chain of command to Shea, the Director of the Jersey City's Department of Public Safety, who oversaw the off-duty account and was ultimately accountable for the program. Thus, Plaintiff's complaints are not protected by the First Amendment because they were made in his official capacity as an Off-Duty Coordinator, and not as a private citizen.

Because Plaintiff has failed to show he spoke as a private citizen, this Court need not address the remaining two elements of the three-part test. *See, e.g., Killion v. Coffey*, 696 F. App'x 76, 78 (3d Cir. 2017). Defendants' summary judgment motion is granted as to Plaintiff's freedom of speech claim.

### b. Count Two – § 1983 Claim Against Jersey City

Generally, a public entity is not liable under § 1983 for the actions of its employees unless the injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). A policy or custom can be established where:

> (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a

9

formally announced policy, violates federal law itself; or (3) . . . "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of [the] existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

*Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 177 (3d Cir. 2013) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

Here, Plaintiff alleges a policy or custom existed whereby Fulop ordered retaliatory action against those who opposed him, and that Shea carried out this policy with Zacche's "full knowledge and participation." (Pl.'s Br. at 62.) However, nothing in the record supports a finding that such a policy or practice of political retaliation existed. To the contrary, the City has promulgated policies that specifically prohibit discrimination or harassment based on political activities or affiliations. (Defs.' Statement Material Facts ¶¶ 157-62) [hereinafter Defs.'s 56.1]. Therefore, Defendants' motion for summary judgment is granted as to Plaintiff's *Monell* claim.

### c. Count Three – Conscientious Employee Protection Act ("CEPA")

CEPA prohibits employers from taking "any retaliatory action against an employee" who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J. Stat. Ann. § 34:19-3. To establish a CEPA retaliation claim, Plaintiff must demonstrate:

> (1) he . . . reasonably believed that his . . . employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he . . . performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3 c; (3) an adverse employment action was taken against him . . . ; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

10

*See Young v. Twp. of Irvington*, 629 F. App'x 352, 356 (3d Cir. 2015) (quoting *Caver v. City of Trenton*, 420 F. 3d 243, 254 (3d Cir. 2005)).

As a threshold matter, this Court must first "identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003). City Ordinance 13.141 requires the off-duty employment intake manager verify that there are sufficient funds in the trust account before posting a request for off-duty personnel services. Jersey City Municipal Code § 3-85.1(c)(3). Additionally, in the event that the trust account's funds are depleted, "services of off-duty personnel shall cease, and requests for further or future services shall not be posted . . . ." Jersey City Municipal Code § 3-85.1(c)(4). Plaintiff alleges that funds were being misappropriated, and that the trust account was operating at a deficit. (Pl.'s 56.1 ¶ 86.) It is undisputed that the off-duty trust account ledger did not reflect sufficient funds to cover the costs of off-duty work, and that the City needed to cover the wages. (Defs.' 56.1 ¶¶ 39-40; Pl.'s Resp. Defs.' 56.1 ¶¶ 39-40.) Thus, there is a "substantial nexus" between the alleged misappropriation and the requirements set forth in the ordinance. *See Dzwonar*, 828 A.2d at 901. Although Defendants deny that the funds were misappropriated, CEPA does not require an actual violation of a law or regulation, only a reasonable belief that a violation has occurred. *See Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (N.J. 2000).

Whistle-blowing activity is defined as an objection to, or refusal to participate in an activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated to law. N.J. Stat. Ann. § 34:19-3(c). Plaintiff alleges that in early September 2014, he complained to a JCPD union designee that Kakoleski was misappropriating funds from the off-duty account. (Goldrich Dep. 51:15-52:12, Apr. 1, 2016.) Afterwards, the union designee informed Shea about Plaintiff's complaints; and around October 2, 2014, Plaintiff met with Shea and Mahoney, at which point they discussed the trust account's deficit. (*Id.* at

11

53:24-56:12.) Viewing the facts "in the light most favorable to the nonmoving party" on a motion for summary judgment, Plaintiff has established that he performed whistle-blowing activities by drawing attention to activities and circumstances that he believed were improper. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, the second prong of the analysis is satisfied.

Plaintiff alleges that he suffered adverse employment actions after his meeting with Shea and Mahoney. Adverse employment actions include "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. § 34:19-2(e). Specifically, he alleges that he was transferred to a "less-desirable" position in the Patrol Division, was denied a transfer to serve as Executive Officer of the East District, given a different schedule from his wife, and forced to continue his work as the Off-Duty Coordinator without being properly compensated. Assuming that Plaintiff can establish that he suffered adverse employment actions, there is no evidence supported in the record to suggest that any of the Defendants, other than Shea, were aware of Plaintiff's complaints about the off-duty account. Plaintiff's assertion that there is circumstantial evidence that Zacche had knowledge of his complaints is not supported by anything other than Plaintiff's conjecture. Plaintiff does not allege that Connors knew that Plaintiff had complained about the off-duty account, or that Connors took any retaliatory action because of those complaints. As Plaintiff cannot establish a causal connection between his whistle-blowing activity and the adverse employment actions that he attributes to Zacche and Connors, he cannot sustain his CEPA claim against them.[7] Therefore, Defendants' motion for summary judgment to dismiss Plaintiff's CEPA claim is granted as to Zacche and Connors.

---

[7] Because Plaintiff cannot established that Zacche or Connors were aware that Plaintiff complained about the off-duty account, they are also entitled to qualified immunity. *See Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for

In contrast, however, not only does Plaintiff allege that he complained directly to Shea about the off-duty account, he also alleges that Shea was "placed in charge of assignments" and that he "effectively controlled personnel decisions in the JCPD." (Lockman Cert., Ex. 3, Cowan Aff. ¶ 14(c); *see also* Pl.'s Br. at 9, 50.) Therefore, Defendants' motion for summary judgment to dismiss Plaintiff's CEPA claim is denied as to Shea.

### d. Count Four – Conspiracy

To establish a claim of conspiracy under § 1983, Plaintiff must demonstrate that two or more conspirators reached an agreement to deprive him of a constitutional right "under color of state law[,]" and that the plaintiff was deprived of that constitutional right. *See Johnson v. Zagori*, No. 09-4934, 2011 WL 2634044, at *6 (D.N.J. June 30, 2011) (quoting *Green v. City of Paterson*, 971 F. Supp. 891, 908 (D.N.J. 1997)). "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Torrey v. New Jersey*, No. 13-1192, 2014 WL 941308, at *13 (D.N.J. Mar. 11, 2014) (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa.1997)). Rather, the plaintiff bears the burden of showing that the alleged conspirators "reached an understanding, or had a 'meeting of the minds' to violate his rights." *See Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 547 (D.N.J. 2013) (quoting *Phillips v. Alsleben*, No. 08-1388, 2011 WL 817166, at *11 (E.D. Pa. Mar. 7, 2011)). A plaintiff may not rely on "suspicion and speculation" to meet this burden. *Id.* (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

Plaintiff alleges that Defendants acted in concert to retaliate against him because he was associated with Cowan. Because summary judgment is granted as to Plaintiff's freedom of association and freedom of speech claims, the related conspiracy claims are also dismissed.

---

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").

*Thomas v. City of Vineland*, No. 12–6396, 2015 WL 4757817, at *8 (D.N.J. Aug. 12, 2015) ("To prove a civil rights conspiracy claim, Plaintiffs must show that they suffered an actual deprivation of their constitutional rights."). Furthermore, in arguing that Defendants conspired to retaliate against him, Plaintiff relies on his own deposition testimony to confirm facts, with no other support. For example, references to Connors' alleged statement that "all Bubba people must go[,]" and the union designee's alleged statement that "people were rubbed the wrong way as a result of [Plaintiff's] complaints [about the off-duty account], and . . . they were going to get petty" come from Plaintiff's own deposition transcript. (Goldrich Dep. 123:24-124:7, Apr. 1, 2016; *id.* at 64:2-64:7.) However, beyond mere suspicion and speculation, Plaintiff has not provided a factual basis supported by any evidence to establish that Defendants colluded against him. Therefore, Defendants are entitled to summary judgment with regard to Plaintiff's civil conspiracy claim.

   e. **Count Five – New Jersey Civil Rights Act**

The New Jersey Civil Rights Act ("NJCRA") creates a private cause of action for any person who:

> has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . . .

N.J. Stat. Ann. § 10:6-2(c).

Plaintiff alleges Defendants infringed on his First Amendment rights in violation of the NJCRA. However, Plaintiff's NJCRA claim is barred by CEPA's waiver provision, which states, "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other . . . State law, rule or regulation or under the common law."

N.J. Stat. Ann. § 34:19–8; *Hilburn v. Bayonne Parking Auth.*, No. 07-5211, 2009 WL 235629, at *9 (D.N.J. Jan. 30, 2009) (noting that all claims "substantially related" and based on the same conduct as the CEPA claim are waived); *Smith v. Twp. of E. Greenwich*, 519 F. Supp. 2d 493, 510 (D.N.J. 2007). Therefore, Defendants are entitled to summary judgment as to Plaintiff's NJCRA claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Joint Motion for Summary Judgment is **GRANTED in part, and DENIED in part**. An appropriate Order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Hon. Leda D. Wettre U.S.M.J.
       Parties