## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GOLDRICH, | Civil Action No. |
| Plaintiff, | 15-885 (SDW) (LDW) |
| v. | |
| CITY OF JERSEY CITY *et al.*, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is defendants' motion for sanctions, including an award of attorneys' fees, against plaintiff David Goldrich pursuant to Federal Rules of Civil Procedure 37(b), 37(e) and 41. Plaintiff opposes the motion. United States District Judge Susan Davis Wigenton referred the motion to the undersigned for a Report and Recommendation. The Court held an evidentiary hearing on April 20, 2018. Having considered the parties' written submissions (ECF Nos. 144, 155, 159, 169, 172) and the testimony presented at the hearing (ECF No. 166), this Court recommends that defendants' motion for sanctions be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

### I.    BACKGROUND

Plaintiff David Goldrich, formerly a Lieutenant (now a Captain) in the Jersey City Police Department, commenced this federal civil rights action in February 2015. Plaintiff essentially alleges that defendant City of Jersey City and various of its employees retaliated against him in violation of the federal and state Constitutions and state law based on his engaging in protected political speech and whistleblowing activities during the period from September 2014 to November 2014. *See* ECF No. 21. Following the District Court's rulings on defendants' motions

to dismiss and for summary judgment, familiarity with which is assumed (ECF Nos. 56, 71, 139, 140), the sole remaining cause of action is plaintiff's claim under the New Jersey Conscientious Employee Protection Act ("CEPA") against defendants Jersey City and Jersey City's Director of Public Safety James Shea. Plaintiff contends these defendants violated CEPA[1] by denying him the position of Executive Officer of the East District (the "XO position") in retaliation for his internal complaints that he believed certain City funds were being misappropriated. *See* ECF No. 139 at 12.

The genesis of the instant sanctions motion was plaintiff's assertion in his counsel's November 12, 2015 response to defendant Jersey City's request for production of documents that:

> A computer virus was inadvertently acquired on Plaintiff's home computer(s) via Plaintiff's personal email account. As a result, there are certain files on said computers which are related to the instant lawsuit but are currently unrecoverable. If any discoverable files are subsequently recovered, Plaintiff's counsel will produce same.

ECF No. 144-3, Ex. 3 at 1 n.1.[2] Defendants demanded that plaintiff preserve the virus-afflicted computer so that they could attempt to retrieve this information. ECF No. 144-3, Ex. 5. After defendants pressed for clarification as to what information had become unavailable due to the purported computer virus, plaintiff's counsel identified, *inter alia,* the following: (1) notes taken by plaintiff during discussions with supervisor Tom Mahoney regarding alleged misappropriation of funds (the "Mahoney Notes"); and (2) "documents" from October 2014 related to Captain

---

[1] CEPA prohibits employers from taking "any retaliatory action against an employee" who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J.S.A. § 34:19-3.

[2] In the briefing of this motion, the parties discuss a host of other alleged irregularities in the timing and manner of plaintiff's production of ESI. In the interest of brevity and judicial economy, this Report and Recommendation discusses only those issues relevant to the outcome of this motion.

Sollitti's speaking to plaintiff about his choice of candidates for the XO position (the "Sollitti Notes"). ECF No. 144-3, Ex. 13.

Eventually, defendants sought and obtained from this Court an Order of November 16, 2016 requiring plaintiff to produce for inspection by defendants' forensic expert the devices on which the purportedly lost electronically stored information ("ESI") once existed – a laptop and plaintiff's personal iPhone. ECF No. 89. The latter, according to plaintiff, ceased to be operational when he dropped it in a toilet; depending on which version of plaintiff's testimony is relied upon, the dropping of the iPhone occurred in either 2013, 2014, or 2015. *See* ECF No. 144-3, Ex. 16 at 297; ECF No. 144-3, Ex. 6 at 39:20-40:18; ECF No. 166 at 97:10-12.

Defendants' forensic expert, James Cassidy, reached some startling conclusions from his inspection of the Laptop provided by plaintiff for inspection (the "Laptop"). Although he was unable forensically to examine the iPhone because it would not power on, he imaged the Laptop[3] and concluded that the device had never even been turned on for a three-year period covering the entire period relevant to this lawsuit. *See* ECF No. 144-6 ¶ 18. Specifically, Cassidy concluded that the Laptop provided by plaintiff was not turned on or used by anyone between August 2013 and August 2016, that it was never infected with a virus, and that the audio recordings and other documents produced in discovery had never been stored on the Laptop. *See generally* ECF No. 144-6. Thus, as further described below, Cassidy concluded that the Laptop provided by plaintiff could not have been the computer plaintiff used during the events giving rise to this action, which occurred in 2014, nor the computer plaintiff had used to store or transfer the evidence he had produced in this lawsuit. ECF No. 144-6 ¶ 50.

---

[3] Cassidy explained at the evidentiary hearing that "imaging" a device is essentially creating a "bit-for-bit image" or copy of a hard drive. ECF No. 166 at 16:19. "It [creates] an eggshell around the data so it's untouched, unchanged, unaltered." *Id.* at 17:7-8.

Defendants filed the instant motion with Court leave on January 29, 2018. ECF No. 144. Once briefing was completed, the Court held an evidentiary hearing on April 20, 2018. Cassidy and plaintiff testified at the hearing. Plaintiff testified that he thought he had produced the computer he had used during the relevant period and thus could not explain Cassidy's conclusions to the contrary. Notably, plaintiff did not retain his own computer expert to rebut Cassidy's conclusions.

The Court received and considered post-hearing briefing by plaintiff and defendants. ECF Nos. 169, 172. It now issues its Report and Recommendation based upon the proofs before it.

## II.    DISCUSSION

Defendants ask the Court to impose sanctions against plaintiff on three grounds: (1) for failure to comply with a Court Order pursuant to Fed. R. Civ. P. 37(b) and 41; (2) for spoliation of evidence pursuant to Fed. R. Civ. P. 37(e); and (3) for fraud on the Court. Defendants contend that plaintiff intentionally violated the Court's Order requiring him to produce his computer for forensic inspection and that plaintiff spoliated evidence with the purpose of depriving defendants of its use. Defendants argue that the appropriate sanction is dismissal of plaintiff's sole remaining claim in this action.

After careful consideration of the evidence presented by the parties and forensic computer analyst James Cassidy, the undersigned finds that plaintiff indeed failed to comply with the Court's Order to produce his purportedly virus-infected computer for forensic inspection. Instead, he produced a Laptop that was not used at all during the underlying events leading to this litigation. The Court further finds that plaintiff spoliated two categories of ESI – the Mahoney Notes and the Sollitti Notes. Accordingly, the undersigned respectfully recommends, first, that the District Court award defendants reasonable fees and expenses incurred in connection with the examination of the

4

Laptop and briefing of this motion under Fed. R. Civ. P. 37(b), and, <u>second</u>, that the District Court inform the jury of plaintiff's spoliation of evidence and give an appropriate jury instruction concerning it under Fed. R. Civ. P. 37(e)(1). The Court does not recommend that the District Court find a fraud was committed upon the Court.

### A. Rule 37(b), Failure to Comply with a Court Order

Defendants first seek dismissal of plaintiff's remaining claim under CEPA pursuant to Rules 37(b) and 41(b) for failure to comply with the Court's November 16, 2016 Order to produce the computer with relevant evidence for imaging. *See* ECF No. 144-1 at 35. Plaintiff's Opposition Brief does not address defendants' motion for sanctions on this ground. *See* ECF No. 155. For the reasons set forth below, the undersigned finds that plaintiff violated the Court's Order and recommends that the District Court award reasonable expenses for defendants' computer expert and attorneys' fees in connection with the forensic inspection and this motion pursuant to Fed. R. Civ. P. 37(b)(2).

### 1. Legal Standard

Federal Rule of Civil Procedure 37(b)(2), governing sanctions for a party's failure to obey a discovery order, provides in relevant part:

> (A) For Not Obeying a Discovery Order. If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > (iii) striking pleadings in whole or in part;
> > (iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;[4]
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . .

(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A) and (C).

The Rule's purposes are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the Court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure. *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006); *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). The Court has broad discretion regarding the type and degree of sanctions to impose, but the sanctions must be just and related to the claims at issue. *Wachtel*, 239 F.R.D. at 84; *Estate of Spear v. Comm'r of Internal Revenue Serv.*, 41 F.3d 103, 109 (3d Cir. 1994) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).

When, as in this case, defendants ask the Court to sanction plaintiff by depriving him of the right to proceed with a claim, the Court applies the analysis established in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). Under *Poulis*, the Court considers:

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

---

[4] Federal Rule of Civil Procedure 41(b) further provides that: "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

*Id.* at 868. Not all six factors are necessary for dismissal of a claim. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). The Court also recognizes the preference in this Circuit to decide a case on the merits. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) ("[D]ismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits."); *Wachtel*, 239 F.R.D. at 101 ("Default is an extreme sanction that must be reserved for instances in which it is justly merited.").

### 2. Analysis

The Court finds plaintiff failed to comply with the Court's Order to produce the relevant computer to defendants' expert for forensic inspection. By way of background, on September 15, 2016, defendants served on plaintiff a demand to produce his computer and iPhone for forensic examination, in an effort to recover relevant evidence plaintiff claimed to have lost as a result of a computer virus. ECF No. 144-3, Ex. 17. Plaintiff objected, and the parties raised the dispute with the Court. ECF Nos. 73, 75. The Court issued a November 16, 2016 Order providing: "Plaintiff shall make the requested electronic devices, a cellular telephone and laptop computer, available for inspection and imaging by an independent forensic expert on or before December 2, 2016." ECF No. 89. As noted above, certified computer forensic examiner James Cassidy, retained by defendants, determined that the Laptop produced by plaintiff could not have been the computer plaintiff used to produce and transfer evidence because it was not even turned on during the period plaintiff claims to have used it. *See* ECF No. 144-6 ¶¶ 18, 50. Upon careful consideration of the evidence presented, the Court adopts this conclusion, and therefore finds that plaintiff violated the Court's November 16, 2016 Order.

The Court finds well-founded Cassidy's conclusion that the Laptop produced was not turned on between August 2013 and August 2016. With instructions to "provide [defense counsel]

with a file listing report identifying all multimedia files stored on the Laptop between September 1, 2014 through January 31, 2015," Cassidy attempted to "generat[e] a report of all files created on the device between" those dates. ECF No. 144-6 ¶¶ 10, 18. This was the time period in which the events giving rise to plaintiff's claim occurred, and thus any files created during that time period potentially would be relevant to plaintiff's claim. Cassidy discovered, however, that no files whatsoever had been created or accessed during that time period, or at any time between August 19, 2013 and August 4, 2016. ECF No. 144-6 ¶ 18; ECF No. 166 at 22:9-10. With this, Cassidy concluded it was impossible for the Laptop to have been used during that time, and that, therefore, plaintiff must have produced the incorrect Laptop. ECF No. 144-6 ¶ 50.

Cassidy explained that simply by virtue of turning on a computer, it must access and create files. ECF No. 166 at 21:6-10. After all, he explained, a "computer is nothing more than the ability to read a program," so when a user turns on a computer and opens a program, the computer by definition must read the "step-by-step instructions as to what that program is to do . . . . And it needs to refer back to files." ECF No. 166 at 21:13-21. Further, Cassidy explained that "a computer will typically generate new files whenever it is in operation, regardless of whether the user intended to create new files," and that "[e]ven the mere act of logging into the internet will create temporary internet files, and the act of powering on a device will often trigger automatic updates to its operating software." ECF No. 144-6 ¶¶ 20, 20 n.2. Foreclosing the possibility that the computer was used during the relevant period, the Court asked Cassidy during the hearing: "If the computer had only been turned on, and nothing else had been done, turned on and turned off, what would you expect to see on the computer?" Cassidy testified: "I would expect to see system files. System files that were accessed and read at the time of the boot." ECF No. 166 at 22:11-16.

Because no files were created or accessed between August 2013 and August 2016, the Laptop could not have been used during that time.

Not only was this conclusion not effectively called into question by plaintiff's counsel at the evidentiary hearing or during the briefing of this motion, this conclusion was not the subject of *any* questions by plaintiff's counsel on Cassidy's cross-examination at the hearing. Plaintiff did not retain an independent examiner or computer expert to rebut Cassidy's explanation in any way. The only evidence presented by plaintiff in rebuttal was the testimony of plaintiff himself:

> THE COURT: Did you use the computer between 2013 and 2016?
>
> THE WITNESS: Yes, I did.
>
> THE COURT: How do you explain Mr. Cassidy's conclusion?
>
> THE WITNESS: I can't. I can't.

ECF No. 166 at 109:12-17.

Plaintiff has not come forward with any plausible explanation for Cassidy's conclusion and simply offers his own self-serving testimony that he did use the Laptop during the three-year time frame.[5] The Court is struck, for instance, that plaintiff, while noting that he owns and has used multiple computers, never asserted that the computer he actually used in connection with this litigation may have been one of his other computers, much less offered to make his other computers available for forensic examination. While having this and any number of other possible solutions within his control to correct any misunderstanding regarding which device should have been produced for imaging, plaintiff has utterly failed to provide any suggestion to rectify or mitigate the issues presented by Cassidy's conclusion that the Laptop was not used. Plaintiff's shallow

---

[5] Plaintiff admits the evidence suggests: "At worst, Plaintiff produced the incorrect computer." ECF No. 155 at 33.

assertions that he used the Laptop are unambiguously contradicted by defendants' expert report and testimony.

The undersigned therefore finds that defendants have proven that the Laptop produced by plaintiff was not used in any capacity between August 2013 and August 2016. Plaintiff could not have turned on the Laptop during the events of 2014, let alone actively used it to create and store the evidence that was produced in this case. While cognizant of the gravity of such a conclusion, the undersigned finds the only plausible explanation for the evidence presented is that plaintiff did not comply with the Court's November 2016 Order requiring him to produce the computer on which he claimed to have stored evidence relevant to this lawsuit.

Next, there is no credible evidence that the Laptop ever had a virus, despite plaintiff's asserting this in his November 2015 document response and elsewhere. Plaintiff testified at the evidentiary hearing that he "assumed" the Laptop had a virus because it became slow when used and there was a wheel spinning on the screen, but that he did nothing to confirm his suspicion. ECF No. 166 at 75:12-25. When asked by the Court if he noticed that documents began to disappear from the Laptop, he testified: "That I don't remember." ECF No. 166 at 76:1-3. Plaintiff then altered his testimony, stating that he believed the computer had a virus "based on not seeing the documents on the computer." ECF No. 166 at 77:3-4.

Cassidy's forensic examination of the Laptop found no evidence of a virus. Using two separate virus detection software programs, Cassidy determined that there was never a virus on the Laptop he examined. *See* ECF No. 144-6 ¶ 14; ECF No. 166 at 19:9-20:24. This testimony was contradicted solely by plaintiff's inconsistent testimony at the evidentiary hearing as to his basis for believing the Laptop had contracted a virus. Plaintiff's counsel did not cross-examine Cassidy on this topic, the virus is not mentioned at all in plaintiff's supplemental briefing to the Court, and

10

the only argument on this issue in plaintiff's opposition brief is that even if plaintiff "may have misidentified this issue as a 'computer virus' [this] does not show bad faith." ECF No. 155 at 5. While plaintiff's counsel is correct, in that a simple misidentification of a computer issue does not show bad faith, it also does not refute the fact that there was never a virus on plaintiff's Laptop. With such a finding, every assertion by plaintiff as to the loss of ESI is called into question, as the purported virus was the reason that the ESI was allegedly lost, as affirmatively asserted by plaintiff at the outset of discovery as a reason why he could not produce all documents responsive to defendants' discovery demands.

That plaintiff produced the wrong computer is further evidenced by Cassidy's conclusions that the files produced by plaintiff were never located on the Laptop and that no external device produced by plaintiff ever interfaced with the Laptop. On May 24, 2017, Cassidy obtained from plaintiff two USB devices for imaging: an eight GB SanDisk Edge USB Flash Drive and a thirty-two GB Toshiba USB Flash Drive. ECF No. 144-6 ¶ 39. These devices had been provided by plaintiff, who represented he had transferred evidence onto them from his Laptop, and that he then turned them over to his counsel to produce to defendants. ECF No. 144-3, Ex. 6 at 50:20-51:11. Cassidy determined that these drives had never interfaced with the Laptop, and he subsequently ran a test to determine if the evidence stored on the drives had ever been present on the Laptop. ECF No. 144-6 ¶¶ 39-40. To perform the search, Cassidy generated a "hash value" for each file on the thumb drives. ECF No. 144-6 ¶ 40; ECF No. 166 at 26:1-10. A "hash value," Cassidy explained, is "a DNA/fingerprint" of a particular file, such that "every single file has a hash value with that – if I change one character, one space in that file anywhere, it completely changes the hash value." ECF No. 166 at 17:18-23. Cassidy then examined whether the files' hash values were present on the Laptop's hard drive. ECF No. 166 at 26:1-10. He found that no hash values

11

for the files on the USB drives, and therefore none of the files themselves, were ever located on the Laptop. ECF No. 166 at 26:1-10; ECF No. 144-6 ¶ 40.

Once again, plaintiff's counsel did not cross-examine Cassidy on this particular topic and plaintiff did not effectively rebut this. The Court finds that the evidence produced by plaintiff on the USB drives during discovery was never located on the Laptop that was produced. As plaintiff testified that he used the Laptop to transfer the evidence to the USB drives, this conclusion further supports the Court's finding that the Laptop produced by plaintiff could not be the computer he used for this purpose. Accordingly, the evidence is clear that plaintiff violated the Court's Order to produce the computer he testified he had used to store and gather evidence relevant to this case.

Having concluded that plaintiff failed to comply with the Court's November 2016 discovery order in violation Fed. R. Civ. P. 37(b)(2)(A), the Court must determine the appropriate sanction. Defendants move for dismissal of plaintiff's remaining claim. The Court therefore must analyze the *Poulis* factors to determine if dismissal is warranted. First, the Court finds plaintiff is entirely responsible for his failure to comply with the Court's Order.[6] Second, as explained below, defendants are prejudiced by the failure to comply, as they were not given an opportunity to recover purportedly lost ESI that plaintiff acknowledged was relevant to the CEPA claim. Third, plaintiff's history of dilatoriness is neutral; on one hand, plaintiff did not notify defendants of the alleged virus for a number of months after it allegedly appeared[7] and produced the devices only

---

[6] There is no evidence to suggest plaintiff's counsel contributed to the issues discussed herein, aside from his responsibility to convey the information he learned from his client to the Court and to defendants, and to act as an advocate on his client's behalf. *See Schindler Elevator Corp. v. Otis Elevator Co.*, Civ. No. 09-560 (DMC), 2011 U.S. Dist. LEXIS 116883, at *19 (D.N.J. Mar. 24, 2011) ("A finding that a party, and not solely its counsel, is responsible for a discovery violation will weigh in favor of default or dismissal.") (citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 692 (3d Cir. 1988)).

[7] Plaintiff asserts that the virus occurred around the time this lawsuit was filed in February 2015, but he did not notify defendants of the virus until November 2015.

after the Court ordered him to do so, but on the other hand, the Court notes that it was plaintiff who notified defendants of the virus in the first place and produced the list of evidence that was allegedly lost and is the subject of the instant motion.  Fourth, defendants have not presented the Court with concrete evidence of bad faith; while the specter of bad faith certainly has been raised, it has not been sufficiently developed by defendants to constitute evidence sufficient to meet their burden.  *See Bull v. UPS*, 665 F.3d 68, 77 (3d Cir. 2012) (providing it is the movant's burden to prove bad faith).  Fifth, alternative sanctions, such as a monetary sanction, may be effective to deter plaintiff and other litigants from non-compliance in the future.  Sixth, as the Honorable Susan Davis Wigenton, U.S.D.J., granted summary judgment to defendants on all counts except for one, the Court finds there is likely merit to plaintiff's remaining claim.  Accordingly, the Court recommends to the District Court that dismissal is not warranted under the *Poulis* factors, and that alternative sanctions should be considered.

Specifically, the undersigned recommends that the District Court order plaintiff to pay defendants the expense of the forensic computer expert and reasonable attorneys' fees for the instant motion.  Rule 37(b)(2)(C) provides: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Here, the Court finds plaintiff's failure to comply with the Court's Order was not substantially justified and that there are no other circumstances that make an award of expenses unjust.  Further, the imposition of attorneys' and expert fees will compensate defendants for the expense they have had to bear due to plaintiff's failure to comply with the Court's Order, and the Court trusts that such a sanction will deter plaintiff and other litigants from non-compliance in the future.

## B. Rule 37(e), Spoliation of ESI

Defendants further ask the Court to dismiss plaintiff's claim as a sanction pursuant to Fed. R. Civ. P. 37(e) for plaintiff's spoliation of ESI. As discussed below, the Court finds that relevant evidence was lost due to plaintiff's failure to take reasonable steps to preserve ESI and defendants are prejudiced by such loss. The undersigned recommends that the District Court impose sanctions pursuant to Fed. R. Civ. P. 37(e)(1) in the form of informing the jury of the loss of evidence and instructing the jury how it should consider such loss in reaching a verdict. The Court does not find, however, that defendants have supplied the requisite proof to conclude plaintiff acted intentionally or in bad faith, and therefore does not recommend dismissal of plaintiff's remaining claim.

### 1. Legal Standard

Sanctions for spoliation of ESI pursuant to Federal Rule of Civil Procedure 37(e), as amended effective December 1, 2015, requires a two-step analysis. First, the Court must determine if spoliation of evidence occurred, and second, the Court must determine what sanction is appropriate. Rule 37(e), governing sanctions for a party's failure to preserve ESI, provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > (C) dismiss the action or enter a default judgment.

The burden is on the moving party to show that spoliation occurred and what sanctions are appropriate.[8]  *See Lexpath Techs. Holdings, Inc. v. Welch*, Civ. No. 13-cv-5379 (PGS) (LHG), 2016 U.S. Dist. LEXIS 116597, at *6 (D.N.J. Aug. 30, 2016).  Accordingly, for the Court to first make a finding that spoliation occurred pursuant to this Rule, defendants must show: (1) certain ESI should have been preserved in anticipation or conduct of litigation; (2) that evidence was lost; (3) the ESI was lost because plaintiff failed to take reasonable steps to preserve it; and (4) that it cannot be restored or replaced.

Next, to determine the appropriate sanctions to be imposed, the Court must find either prejudice to defendants or that plaintiff acted with the intent to deprive defendants of the ESI's use in the litigation.  Upon either finding, when deciding what sanction to impose, the Court should consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and . . . deter such conduct by others in the future." *Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (quoting *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *Lexpath Techs. Holdings*, 2016 U.S. Dist. LEXIS 116597, at *16.

---

[8] The parties do not address whether defendants' burden of proof is a preponderance of the evidence or clear and convincing evidence.  *Compare Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498-99 (S.D.N.Y. 2016) (discussing relevant case law and applying a clear and convincing standard), *with Freidman v. Phila. Parking Auth.*, Civ. No. 14-6071, 2016 U.S. Dist. LEXIS 32009, at *17 (E.D. Pa. Mar. 10, 2016) (recognizing *Cat3* and applying a preponderance of the evidence standard).  The Court need not decide which standard of proof applies because the Court's conclusions would be the same under either standard.  *See Kavanagh v. Refac Optical Grp.*, Civ. No. 15-4886 (JHR) (JS), 2017 WL 6395848, at *2 n.5 (D.N.J. Dec. 14, 2017).

## 2. Analysis

As explained below, the Court finds spoliation occurred because plaintiff had a duty to preserve ESI and it was lost as a result of his failure to take reasonable steps to preserve it. The Court also finds defendants are prejudiced and recommends that the District Court impose the sanction of informing the jury of the loss of evidence and giving an appropriate jury instruction. The Court does not find, however, that defendants have proven plaintiff's intent to deprive them of this evidence, and therefore the Court recommends that ultimate sanction of dismissal of plaintiff's sole remaining claim in this case is not warranted.

### a. Spoliation

The Court finds that spoliation occurred as to the relevant ESI, the Mahoney Notes and the Sollitti Notes.[9] As to the first element of spoliation, plaintiff concedes that the ESI should have been preserved in anticipation or conduct of litigation. *See* ECF No. 172 at 1. The Court agrees that plaintiff had an affirmative obligation to preserve the evidence in his possession. The duty to preserve evidence arises when a party in possession of evidence "knows or reasonably should know that litigation is pending or probable." *State Nat'l Ins. Co. v. Cty. of Camden*, Civ. No. 08-5128 (NLH) (AMD), 2011 WL 13257149, at *3 (D.N.J. June 30, 2011). *See also* Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment ("Rule 37(e) does not purport to create a duty to preserve. The new rule takes the duty as it is established by case law, which uniformly holds that a duty to preserve information arises when litigation is reasonably anticipated."). As plaintiff filed this action in February 2015, and testified that he retained counsel for this lawsuit at the end of 2014, ECF No. 144-3, Ex. 6 at 55:4-6, the Court has no doubt that at least by the

---

[9] All other evidence defendants assert was spoliated was either eventually produced, and was therefore not lost, or is not relevant to plaintiff's remaining CEPA claim.

beginning of 2015, plaintiff reasonably knew that the evidence on his computer would be relevant to the instant litigation, and he therefore had a duty to preserve it. Accordingly, the first element of spoliation is satisfied.

The second and fourth elements of spoliation are also met, as it is undisputed that the ESI was located on plaintiff's computer, that it was lost, and that it cannot be restored or replaced. *See* ECF No. 172 at 1. Plaintiff disputes only the third element of the spoliation analysis: that the ESI was lost because plaintiff failed to take reasonable steps to preserve it. *See id.* Here, the Court finds that the ESI stored on plaintiff's computer was lost due to plaintiff's failure to take reasonable steps to preserve it, and that defendants have shown the third element of spoliation in this case.

Plaintiff's duty to preserve evidence required that he take reasonable affirmative steps such as backing up the ESI on an external device or in a separate, secure location. *See Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 428 (W.D.N.Y. 2017) ("Courts routinely hold that a party's discovery obligations include taking affirmative steps to ensure that all potentially relevant evidence is retained.") (internal quotations omitted); *Feist v. Paxfire, Inc.*, Civ. No. 11-5436 (LGS) (RLE), 2016 U.S. Dist. LEXIS 116405, at *14 (S.D.N.Y. 2016) (awarding sanctions for, *inter alia*, plaintiff's failure to backup her computer before it crashed). Plaintiff here took no affirmative steps to preserve the evidence, clearly violating his duty to do so. Rather, plaintiff asks the Court to forgive his negligence and find spoliation did not occur because his computer acquired a virus through no fault of his own. The Court declines to do so, as such a finding would be contrary to law. Even assuming plaintiff's computer did inadvertently acquire a virus,[10] this would not negate the affirmative duty plaintiff had to preserve the evidence *prior* to the computer's obtaining a virus.

---

[10] As explained above, the Court agrees with Cassidy's conclusion that the Laptop produced by plaintiff did not have a virus.

Accordingly, having found that the ESI disappeared while plaintiff had a duty to preserve it, the Court finds spoliation occurred in this case.[11]

The Court further finds plaintiff failed to take reasonable steps to attempt to regain the evidence once it had allegedly been lost due to a virus. As explained above, not only did plaintiff fail to comply with defendants' request to produce his computer until ordered by the Court to do so, but the results of the forensic examination show that the Laptop produced by plaintiff could not have been the actual computer used by plaintiff in this case. Plaintiff's conduct in producing the incorrect computer "is the opposite of taking reasonable steps to preserve ESI." *GN Netcom, Inc. v. Plantronics, Inc.*, Civ. No. 12-1318 (LPS), 2016 WL 3792833, at *7 (D. Del. July 12, 2016) (imposing sanctions upon a finding that defendant did not take "all the reasonable steps it could have taken to recover deleted emails"). In fact, plaintiff's decision to provide a computer he never used in connection with this lawsuit essentially ensured that defendants would not have an opportunity to attempt to recover the lost ESI. Accordingly, the Court finds defendants have met their burden to show that spoliation occurred in this case because ESI was lost due to plaintiff's failure to take reasonable steps to preserve evidence and to restore the evidence once it was lost.

---

[11] Plaintiff repeatedly testified that he was not "computer savvy" and did not understand exactly what he was doing with computers. *See* ECF No. 144-3, Ex. 6 at 22:22-23, 28:24, 70:21-22, 100:11-12; ECF No. 166 at 99:14-16. The Court finds this contention implausible and that plaintiff is more sophisticated in the use of computers than he admits. Plaintiff testified that he owns five computers and that he collected electronic evidence for numerous weeks in 2014. ECF No. 144-3, Ex. 6 at 12:17-13:15. Plaintiff took steps such as downloading a recording application on his iPhone, using the application to record numerous telephone conversations, writing out notes regarding his conversations on his iPhone, transferring the evidence to his computer, and subsequently, *transferring the evidence to external devices* to produce to his attorney and defendants. The fact that plaintiff readily admits that he transferred evidence to the external drives is evidence in itself that plaintiff was more than capable of taking reasonable steps to preserve *all* of the evidence present on his computer, as he had an affirmative obligation to do.

b. Sanctions

Next, to determine the appropriate sanction for spoliation, the Court considers whether defendants are prejudiced by the loss of the ESI and whether plaintiff acted with an intent to deprive defendants of the information's use in the litigation. The Court finds that defendants are prejudiced and recommends, as set forth above, that an appropriate jury instruction be given. Further, although the Court is troubled by plaintiff's conduct, it finds defendants have not met their burden to show that plaintiff acted with intent to deprive defendants of the evidence. Therefore, it recommends that dismissal pursuant to Fed. R. Civ. P. 37(e)(2) is inappropriate.

i. Prejudice

Defendants have demonstrated that they are prejudiced by the loss of the ESI. Rule 37(e)(1) provides that "upon finding prejudice to another party from loss of the information, [the Court] may order measures no greater than necessary to cure the prejudice." Courts have found prejudice exists where documents that are relevant to a claim are unavailable and the moving party has come forward with a plausible, good faith suggestion as to what the evidence might have been. *See GN Netcom, Inc.*, 2016 WL 3792833, at \*6; *Schmid*, 13 F.3d at 80. *See also* Fed. R. Civ. P. 37(e)(1) Advisory Committee Notes 2015 ("An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation.").

The Court finds that the loss of both the Mahoney Notes and the Sollitti Notes is prejudicial to defendants and that they have come forward with a good faith suggestion as to what the spoliated evidence might have been. First, as to the Mahoney Notes, these bear directly on plaintiff's remaining CEPA claim. Plaintiff claims that his meetings with Mahoney about which he took these notes resulted in the alleged retaliation of being denied the XO position. Plaintiff claims that he learned in September 2014 that a supervisor was taking money from one account to "plug holes"

into the City's main operating budget. ECF No. 126-1 ¶ 78. According to plaintiff, he met with Tom Mahoney and another supervisor on October 2, 2014 to discuss plaintiff's complaints about the account. ECF No. 126-1 ¶ 84. Defendants do not dispute that the account had insufficient funds. Rather, defendants explain that the account was operating at a deficit for innocuous reasons which were explained to plaintiff. ECF No. 121-2 ¶¶ 19, 39, 46. Mahoney testified that he and plaintiff spoke numerous times regarding the deficit in the account, but that misappropriation of the account was never discussed. ECF No. 121-2 ¶¶ 45, 49.

Defendants are prejudiced by the unavailability of plaintiff's notes regarding these conversations, as they might have confirmed Mahoney's testimony regarding the subjects discussed. Such evidence would go directly to plaintiff's CEPA claim, in that it would bear on whether plaintiff ever "blew the whistle" on conduct that he reasonably believed was in violation of a law or regulation, as required by CEPA.

Second, the loss of the Sollitti Notes also was prejudicial to defendants. Plaintiff claims that when Captain Daniel Sollitti ("Capt. Sollitti") was given the opportunity to select an individual for the XO position, plaintiff was his first choice, but that the Chief of Police rejected Capt. Sollitti's decision to appoint plaintiff. ECF No. 126-1 ¶¶ 142-44. Defendants, in contrast, assert that Capt. Sollitti did not choose plaintiff because he was apprehensive about plaintiff's insistence on splitting his time between the XO and another position. ECF No. 121-2 ¶¶ 120-21. Capt. Sollitti testified that that this was the reason he ultimately did not select plaintiff for the position and that he made this concern clear to plaintiff when they spoke. ECF No. 144-3, Ex. 23 at 15:19-23.

Plaintiff's cell phone records indicate that he and Capt. Sollitti spoke twenty-one times between October 27, 2014 and November 1, 2014. ECF No. 144-1 at 18. Plaintiff produced only

two partial recordings of those conversations. Defendants suggest in good faith that the lost documents would likely regard the remaining conversations and would support their claim that plaintiff was denied the XO position due to Capt. Sollitti's concerns about plaintiff's maintaining a second employment position. Therefore, this evidence is relevant to the alleged retaliatory action central to plaintiff's CEPA claim and defendants are prejudiced by its unavailability.

### ii. Intent

Defendants ask the Court to dismiss plaintiff's CEPA claim pursuant to Rule 37(e)(2), a sanction the Court can recommend only upon a finding that plaintiff intended to deprive defendants of the evidence. The Court finds defendants have not met their burden to demonstrate that plaintiff acted with the requisite intent to impose such a sanction. Plaintiff's testimony under oath at the evidentiary hearing and his deposition that he believes that he produced the correct Laptop[12] is weak in view of the surrounding circumstances, but the Court finds circumstantial evidence alone to be an insufficient basis on which to find that plaintiff acted with the intent to spoliate relevant evidence. To make this finding that a Captain in the Jersey City Police Department lied repeatedly under oath requires some degree of affirmative evidence of the same that defendants have not proffered. Defendants were given the opportunity to depose those close to plaintiff, such as his wife, who could have provided direct evidence of spoliation if she were aware of any but did not. Therefore, the Court declines to speculate that plaintiff intentionally deprived defendants of the evidence. *See United States v. Pitts*, Civ. No. 10-703, 2011 U.S. Dist. LEXIS 125354, at *24 (E.D. Pa. Oct. 28, 2011).

---

[12] "Q. Based on Cassidy's report . . . in your opinion today, did you overturn for imaging the correct computer? A. I believe I turned the correct computer over; yes I do. Q. Is there any possibility that there may be another computer out there that you just didn't turn over? A. Not to my knowledge. That was the computer I recall using." ECF No. 166 at 110:12-20.

### iii. Recommended Sanctions

Having found defendants are prejudiced pursuant to Rule 37(e)(1), but not finding defendants have shown the requisite intent pursuant to Rule 37(e)(2), the Court considers what sanctions to impose that are "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Sanctions available under Rule 37(e)(1) include:

> forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies.

Fed. R. Civ. P. 37(e) Advisory Committee Notes 2015 ("Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation.").

While defendants are prejudiced by the loss of the ESI in that it may have corroborated the testimony of their witnesses, the lost ESI would not necessarily have been central evidence at trial and likely would have been secondary to the testimony of the City employees themselves. To cure the prejudice suffered by defendants, the Court recommends that the District Court allow defendants to present evidence to the jury regarding the loss of evidence and to issue a jury instruction that it deems fit to assist in the jury's evaluation of such evidence. The Court finds that such a sanction is appropriate because it cures the prejudice to defendants but is no more severe than necessary.

### C. Fraud on the Court

Defendants additionally move for sanctions on the basis that plaintiff committed a fraud on the Court. The Court does not recommend that the District Court find fraud on the Court was committed.

22

The Court may sanction a party pursuant to its inherent power when it finds that fraud has

been practiced upon it. *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995).

> Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Id.* (citation omitted); *Adesanya v. Novartis Pharm. Corp.*, Civ. No. 13-05564 (SDW) (SCM),

2016 WL 4401522, at *4–5 (D.N.J. Aug. 15, 2016). While the Court reiterates that it is troubled

by plaintiff's conduct, it does not find that his behavior rises to the level of creating an

unconscionable scheme improperly to influence the Court or hamper defendants' ability to present

their case. *See Herring v. United States*, 424 F.3d 384, 386-87 (3d Cir. 2005) ("[A] determination

of fraud on the court may be justified only by the most egregious misconduct directed to the court

itself, and . . . it must be supported by clear, unequivocal and convincing evidence.") (internal

quotations omitted).

## III.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that defendants' motion

for sanctions (ECF No. 144) be **GRANTED IN PART AND DENIED IN PART** to the extent

set forth in this Report and Recommendation. The parties are advised that pursuant to Fed. R. Civ.

P. 72(b)(2), they have 14 days after being served with a copy of this Report and Recommendation

to serve and file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated:  July 25, 2018.

Leda Dunn Wettre
**Leda Dunn Wettre**
**United States Magistrate Judge**

Original:    Clerk of the Court
   cc:       Hon. Susan D. Wigenton, U.S.D.J.
             All Parties